IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00411-PAB-BNB

JAMES SCOTT DALY,

Plaintiff,

v.

R. WILEY, Warden, and
BAUER, Captain, Health Services Administrator,

Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following cross-motions for summary judgment:

1. **Defendants Bauer and Wiley's Motion for Summary Judgment** [Doc. #55, filed 06/02/2009] ("Defendants' Motion"); and

2. **Motion for Summary Judgment** [Doc. #60, filed 06/05/2009] ("Plaintiff's Motion").

I respectfully RECOMMEND that Plaintiff's Motion be DENIED and Defendants' Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. BACKGROUND

The plaintiff is currently incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum in Florence, Colorado ("ADX"). He filed his Prisoner Complaint on February 28, 2008 [Doc. #3] (the "Complaint"). The Complaint initially asserted three claims for relief pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Claims One and Two were dismissed. Claim Three was dismissed only as to defendant Nafziger [Doc. #83]. Claim Three alleges that the defendants' delay in providing dental care violated the Eighth Amendment. *Complaint*, p. 6. The plaintiff seeks declaratory, injunctive, and monetary relief. Id. at p. 8.

## III. UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff arrived at ADX on or about July 28, 2006. Upon his arrival, he completed a Medical History Report. Under the section entitled "Have You Ever Had or Have You Now," the plaintiff checked "yes" for "severe tooth or gum trouble." He told unidentified "medical staff" that he had severe tooth pain. *Defendants' Motion*, p. 1, ¶ 2; *Plaintiff's Motion*, p. 3, ¶ 2 and Ex. A, first consecutive page [Doc. #60, p. 17][2]; *Defendants Bauer and Wiley's*

---

[1]The plaintiff makes numerous factual statements which are not supported by evidence or contain inadmissible hearsay. I do not consider unsupported factual statements or inadmissible hearsay in my analysis of the motions.

[2]Included in the Plaintiff's Motion are a Declaration in Support of Motion for Summary Judgment (the "Declaration"); a Brief in Support of Plaintiff's Motion for Summary Judgment (the "Brief"); and numerous exhibits (the "Exhibits"). The Declaration is not filed as an exhibit to Plaintiff's Motion. It is placed between the Motion and the Brief. When citing to factual statements from the Declaration, I cite to "Plaintiff's Motion" and the page number assigned by the court's docketing system. In addition, the plaintiff's Exhibit markers are visible only on the plaintiff's original summary judgment motion; they are not visible in the court's electronic docketing system. The Motion, Declaration, Brief, and half of the Exhibits have been designated as Document #60 by the court's docketing system. The remaining Exhibits have been assigned

*Response to Plaintiff's Motion for Summary Judgment* [Doc. #67] ("Defendants' Response"), p. 2, ¶ 2.

    2. On August 28, 2006, the plaintiff submitted to the Dental Department a written request to be seen by a dentist. The request stated:

> I just arrived from USP - Marion. In May of 2005 I had a large filling fall out and still have not been able to get it re-filled. Can you please try to see me at the earliest possible date.
>
> Thank you for your time and assistance.

*Defendants' Motion*, p. 2, ¶ 3; *Plaintiff's Motion*, p. 4, ¶ 3 and Ex. B, first consecutive page [Doc. #60, p. 19]; *Defendants' Response*, p. 2, ¶ 3.

    3. The written response to the plaintiff's request states:

> You will be placed on the Dental List. Please be patient, the ADX does not have a Dentist. The only Dentist on the complex . . . comes to the ADX twice a month. He is only seeing the most urgent dental issues currently. The dental list is very long, so it might be awhile before you are seen. It also depends on the availability of Custody staff on whether or not anyone gets moved up to Health Services for their appointment. If you are in pain, you can write a cop-out to sick call and a P.A. can come down and assess and possibly treat your pain.

*Plaintiff's Motion*, Ex. B, second consecutive page [Doc. #60, p. 21].

    4. From September 2006 through mid November 2006, the plaintiff verbally complained of a tooth ache to a physician's assistant. On at least one occasion, the plaintiff complained that his tooth was so infected that his jaw was swollen. *Plaintiff's Motion*, p. 4, ¶ 4; *Defendants' Response*, pp. 2-3, ¶ 4.

---

as Document #60-1. When citing to the plaintiff's exhibits, I cite both to the plaintiff's original exhibit designation and to the corresponding document and page numbers assigned by the docketing system.

5. On November 25, 2006, the plaintiff submitted to the Dental Department a written request to see a dentist, stating:

> May 2005, while in USP-Marion, I had a filling fall out. Since then, for a year and a half now, I have either been on Marion's waiting list, or now ADX's - I sent you a cop-out when I first arrived and was told I was placed on a waiting list. I have not had my teeth cleaned in years, the tooth that the filling fell out of is now about half rotted away, and now another tooth is starting to bother me. While I certainly don't expect the government to provide me with the "best" of dental care, I do not think it is not unrealistic to expect the government to provide me with "adequate" and "reasonable" care. Waiting a year and a half for a filling does not seem reasonable under any standard.
>
> Please . . . I would like to see a dentist.

*Plaintiff's Motion*, p. 4, ¶ 5 and Ex. C, first consecutive page [Doc. #60, p. 21].

6. The plaintiff received the following response from "Y. Fetterhoff, MRAS":

> You have been on the Urgent Dental List since 08/28/2006 for you[r] tooth pain and the Dental Cleaning List since 08/28/2006 to get you[r] teeth cleaned. Please continue to be patient, the ADX still does not have a Dentist. There are many inmates in pain that have been waiting a lot longer than you have. The only Dentist on the Complex . . . comes to the ADX twice a month. He is only seeing the most urgent dental issues currently. The urgent dental list is very long, so it might be awhile before you are seen. FCC Florence recently hired a dental hygienist. She also comes to the ADX twice a month. Her list to do cleanings is very long also.
>
> The ADX's Dental List and Marion's Dental List has [sic] nothing to do with each other. They are two different institutions and do not share the same call out lists at all. It is what it is. There is literally nothing anybody can do to speed up the process. It also depends on the availability of Custody staff on whether or not anyone gets moved up to Health Services for their appointment. If you are in pain, you can write a cop-out to sick call and a P.A. can come down and assess and possibly treat your pain.

*Plaintiff's Motion*, p. 4, ¶ 5 and Ex. C, second consecutive page [Doc. #60, p. 22].

7. Some time between December 2006 through January 2007, the plaintiff complained to a physician's assistant that he was in pain and needed to see a dentist. *Plaintiff's Motion*, p. 5, ¶ 6; *Defendants' Response*, p. 3, ¶ 6.

8. On January 25, 2007, the plaintiff submitted to the Dental Department the following request to be seen by a dentist:

> I have had a cavity (where a filling has fallen out) for 2 years now, I have gum disease, and my teeth are sensitive (they hurt!) when I brush and/or floss them. In short, I am tired of having bad breath from all the rotting and decaying teeth in my mouth. I would like to know on the average how long does it usually take to get in to see the dentist once you have been placed on the waiting list? And, once I am able to see him, will I be able to get everything taken care of at once?

*Plaintiff's Motion*, p. 5, ¶ 7 and Ex. D [Doc. #60, p. 23].

9. Y. Fetterhoff responded to the plaintiff's request:

> Mr. Daly - you are on two different dental lists. You are on the Dentist's list for you[r] cavity issue and on the Dental Hygienist's list for a dental cleaning. They are not here at the ADX at the same time. Please continue to be patient, you will be brought up to health when it is your turn.

Id.

10. On March 8, 2007, the plaintiff submitted to his counselor an "Informal Resolution Form" complaining that he was being denied "adequate and reasonable dental care." He stated that his teeth had not been cleaned in years and that he had been denied treatment for nearly two years and has "had to deal with tooth aches." *Plaintiff's Motion*, p. 5, ¶ 8 and Ex. E, first consecutive page [Doc. #60, p. 24]; *Defendant's Response*, p. 5, ¶ 8. The counselor responded that a review of the complaint had been conducted, and the plaintiff's request had been forwarded to the Health Services Administrator. Id.

11. On March 13, 2007, the plaintiff filed a "Request for Administrative Remedy" with the Warden's office. The plaintiff stated:

> I have been in need of a filling for nearly two years. In May of 2005 a filling fell out of one of my teeth. Since that date I have been denied reasonable dental care. Off and on it has caused pain and discomfort. Now about half of the tooth has rotted away. While I have been assured that I have been placed on a list to be seen, I have also been told that there is only one dentist for the entire complex and that he only comes to the ADX once a week - thus, I may have to wait awhile to be seen. I should not have to suffer because the institution does not have adequate dental staff to provided [sic] the proper care.

*Plaintiff's Motion*, pp. 5-6, ¶ 9 and Ex. E, second consecutive page [Doc. #60, p. 25]; *Defendants' Response*, pp. 5-6, ¶ 9.

12. Defendant Wiley received the plaintiff's "Request for Administrative Remedy" on March 15, 2007, and responded:

> A review of the issue raised in your Request for Administrative Remedy has been conducted. The result of the review reveals you arrived at this institution on July 28, 2006. You submitted a sick call slip to dental services on August 28, 2006, and you were placed on the highest priority waiting list. Your case is not an emergency. Please be patient.

*Plaintiff's Motion*, pp. 5-6, ¶ 9 and Ex. E, third consecutive page [Doc. #60, p. 26].

13. On March 20, 2007, the plaintiff submitted to the Dental Department a request which states:

> I should be on the waiting list to see the dentist. However, I wanted to inform you that I have had another filling fall out (on 3/14), so that when I am seen I can have both cavities filled.

*Plaintiff's Motion*, p. 6, ¶ 10 and Ex. F [Doc. 60, p. 31]; *Defendants' Response*, p. 6, ¶ 10.

7

14. In response to the plaintiff's request, a nurse practitioner advised the him to "[l]et the dentist know all of your dental issues when you are seen." Id.

15. On April 2, 2007, the plaintiff filed a Regional Administrative Remedy Appeal. He stated:

> In May 2005 I had a filling fall out. Since then I have been denied reasonable and adequate dental care. I have had to deal with pain and discomfort on and off every since. On 3/17/07 I had another filling fall out. While I have been told that I have been placed on a priority waiting list, I have also been told that it will likely be months before I am seen because there is only one dentist to provide care for the thousands of prisoners within the entire Florence prison complex. The lack of adequate dental care (and adequate dental staff) violates my constitutional rights. I am requesting that additional dental care workers be hired and that I receive immediate dental care.

*Plaintiff's Motion*, p. 6, ¶ 11 and Ex. E, fourth consecutive page [Doc. #60, p. 27]; *Defendants' Response*, p. 6, ¶ 11.

16. The Regional Director responded to the appeal:

> We have reviewed the documentation related to your appeal. Per the BOP's Program Statement 6400.02, Dental Services policy, all dental requests are triaged and prioritized. We have determined your incurred delay is attributed to the volume of inmates needing dental services and the available dental resources. Be assured, recruitment efforts are underway to hire additional dental staff. We appreciate your patience and encourage you to sign up for sick call to report any symptomatic changes.

*Plaintiff's Motion*, Ex. E, fifth consecutive page [Doc. #60, p. 28].

17. The plaintiff was seen by a dental hygienist on April 5, 2007. The hygienist noted that the plaintiff had moderate plaque, light tarter, and generalized gum issues which indicate early periodontal disease. *Defendants' Motion*, p. 2, ¶ 4; Ex. C, ¶ 13; Attachment 1.

8

18. The plaintiff was seen by a dentist, Dr. Malloy, on April 24, 2007. The plaintiff complained that he had lost the fillings in tooth #10 and tooth #14. The dentist administered medication and filled tooth #10. He placed an alloy on tooth #14. *Defendants' Motion*, pp. 2-3, ¶ 5 and Ex. C, Attachment 1; *Plaintiff's Motion*, p. 6, ¶ 12.

19. On April 28, 2007, the plaintiff submitted the following request to the Dental Department:

> On Tuesday, April 24, I had two cavities filled. Since then one of the fillings has caused me a lot of pain and I think may be infected. The first few days I just experienced a mild pain which I thought would eventually go away. However, for the last couple days the pain has become an excruciatingly bad throbbing pain.
>
> I would like to see a dentist as soon as possible. If I can not be seen immediately I would like to get something for the pain as <u>soon</u> <u>as</u> <u>possible</u>!

*Plaintiff's Motion*, p. 6, ¶ 12 and Ex. G, first consecutive page [Doc. #60, p. 32] (emphasis in original).

20. On April 29, 2007, the plaintiff submitted another request to the Dental Department:

> I need to see a dentist right away! On 4/24 I had two cavities filled. Since then I have experienced excruciating pain from one of the teeth filled.
>
> If I am unable to see a dentist immediately <u>please</u> send some kind of pain relief!

*Plaintiff's Motion*, p. 6, ¶ 12 and Ex. G, second consecutive page [Doc. #60, p. 33] (emphasis in original).

21. The plaintiff was seen by a dentist, Dr. Makrides, on May 2, 2007. Dr. Makrides examined the plaintiff and provided him with medication. He did not have the supplies he needed to treat the plaintiff, but treated him the following day. On May 3, 2007, Dr. Makrides

performed a root canal on tooth #14. *Defendants' Motion*, p. 3, ¶¶ 6-7 and Ex. C, Attachment 1; *Plaintiff's Motion*, p. 6, ¶ 14.

22. Dr. Dawson saw the plaintiff on May 7, 2007. The plaintiff reported that there was no pain in the tooth. Dr. Dawson completed the root canal *Defendants' Motion*, p. 3, ¶ 8 and Ex. C, Attachment 1; *Plaintiff's Motion*, p. 6, ¶ 14.

## IV. ANALYSIS

### A. Claim Three as Against Defendant Bauer

Defendant Bauer is a commissioned officer with the United States Public Health Service, and is presently assigned as the Health Services Administrator for the Federal Correctional Complex. *Complaint*, p. 2, ¶ 3; *Defendants' Motion*, Ex. C, ¶ 2. The defendants assert that as a Public Health officer, Bauer is immune to suit under 42 U.S.C. § 233(a). *Defendants' Motion*, p. 15.

Under 42 U.S.C. § 233(a), an FTCA action against the United States is the sole remedy for injuries allegedly received at the hands of Public Health Service officers acting within the scope of their employment. See also United States v. Smith, 499 U.S. 160, 177 n.3 (1991). The Defendants' Motion should be granted insofar as it seeks dismissal of Claim Three as against defendant Bauer.

### B. Claim Three as Against Defendant Wiley

Claim Three alleges that the defendants' "lengthy delay in providing adequate and reasonable dental care violated plaintiff's Eighth Amendment rights" because he "suffered prolong[ed], extreme and unnecessary [dental] pain." *Complaint*, p. 6. Specifically, the plaintiff alleges that the defendants were deliberately indifferent to his dental needs because they are

10

responsible for providing dental staff at ADX; they did not have a dentist available at ADX for over a year; the unavailability of a dentist resulted in an eight month delay in receiving dental treatment; and that the delay resulted in an abscessed tooth which necessitated a root canal.

Defendant Wiley asserts that he is entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[3] Id. "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the

---

[3]The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

11

plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Medina, 252 F.3d at 1128.

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The government has a constitutional obligation to provide inmates with "a level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates." Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980). This obligation includes the provision of dental care. Id.

To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component. The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir.

1983). Consequently, respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993). See also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violation, liability will not be imposed on a supervisory official. Id.

Here, the record shows that the plaintiff notified defendant Wiley on March 15, 2007, that a filling had fallen out of his tooth in May 2005, and that it had caused him pain and discomfort "off and on" since then. Warden Wiley responded that he had reviewed the issue. He found that the plaintiff arrived at ADX on July 28, 2006; submitted a request to dental services on August 28, 2006; was placed on the highest priority wait list; and his case was not an emergency.

The record supports Wiley's assessment that the plaintiff's dental problems were not emergent. Prior to March 15, 2007, none of the plaintiff's written requests indicated that he was in serious or constant pain. To the contrary, the written requests contained complaints only of pain and discomfort "off and on." The plaintiff was repeatedly told to submit a written request to "sick call" if he was in pain so that he could be evaluated and possibly treated for pain, and there is no evidence in the record to show that the plaintiff submitted a request to "sick call" for treatment of dental pain prior to March 15, 2007.[4] Moreover, there is no evidence to show that

---

[4]The plaintiff submitted two written requests (on April 28, 2007, and on April 29, 2007) to be treated for the "excruciating" pain he suffered after the dentist filled his cavities. The plaintiff was seen within days of his requests.

Wiley knew of the plaintiff's verbal complaints of pain to staff members. The record does not contain any evidence to show that Wiley knew of and disregarded an excessive risk to the plaintiff's dental health.

The plaintiff asserts that the delay in his dental treatment resulted in an abscessed tooth which necessitated a root canal. A "delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Oxendine v. R.G. Kaplan, M.D., 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotations and citation omitted). There is no evidence in the record to show that the plaintiff suffered an abscess and root canal as a result of the delay in receiving dental care. To the contrary, the record shows that the "excruciating" pain in tooth #14 occurred *after* the plaintiff was seen and treated by Dr. Malloy. Treatment of the excruciating pain (the root canal) was not delayed; the source of the excruciating pain was diagnosed and treated within days.

Deliberate indifference to a serious medical need may also be shown by proving "systemic and gross deficiencies in staffing" which result in the actual denial of adequate dental care. Ramos, 639 F.2d at 575. In Ramos, the Tenth Circuit stated:

> In class actions challenging the entire system of health care, deliberate indifference to inmates' health needs may be shown by proving repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff, or by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.

Id. (internal citation omitted).

The Ramos case was a class action suit which challenged a long-standing and institutionally accepted shortage of medical and dental staff at the Colorado State Penitentiary

("Old Max") in Canon City, Colorado. After a bench trial, the district court found that the State had been aware of "grave and systemic deficiencies in the medical care delivery system at Old Max for years." Id. at 562, 574. These deficiencies "extend[ed] across the board from inadequate staff and resources to insufficient transportation arrangements to lack of training and qualification of the limited staff that [did] exist." Id. at 574.

In contrast, the record in this action shows that the shortage of dentists at ADX was temporary and that recruitment efforts were underway to hire additional dental staff. *Plaintiff's Motion*, Ex. E, fifth consecutive page [Doc. #60, p. 28]. Indeed, the plaintiff's own evidence contains numerous emails which demonstrate that the ADX was actively recruiting dentists from October 2006 through April 2007. *Plaintiff's Motion*, Ex. J [Doc. #60, pp. 64, 79-80; Doc. #60-1, pp. 1, 2, 41, 49, 54, 55, 61, 66]. The record also shows that medical staff were available to treat dental pain.

The plaintiff has failed to establish that defendant Wiley was deliberately indifferent to his dental pain. The Defendants' Motion should be granted insofar as it seeks dismissal of Claim Three as against defendant Wiley.

## IV. CONCLUSION

I respectfully RECOMMEND that:

1. Plaintiff's Motion for Summary Judgment [Doc. #60] be DENIED; and

2. Defendants Bauer and Wiley's Motion for Summary Judgment [Doc. #55] be GRANTED and that judgment enter in favor of the defendants on the remaining claim (Claim Three).

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 23, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge